**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
LAINE ADAIR,                    )
                                )
            Plaintiff,          )
                                )
      v.                        )   Civ. Action No. 08-1573 (EGS)
                                )
MINE SAFETY AND HEALTH          )
ADMINISTRATION,                 )
                                )
            Defendant.          )
                                )
_____)

**MEMORANDUM OPINION**

Plaintiff Laine Adair brings this action against defendant
Mine Safety and Health Administration ("MSHA"), under the Freedom
of Information Act ("FOIA"), 5 U.S.C. § 552a, seeking to compel
the MSHA to comply with his FOIA request to produce a transcript
of his interview with MSHA investigators.  Currently pending
before the Court is defendant's motion for summary judgment.
After considering the motion, the response and reply thereto, the
applicable law, and the entire record, this Court **GRANTS**
defendant's motion for summary judgment.

**I.   BACKGROUND**

On August 6, 2007, a catastrophic collapse occurred at the
Crandall Canyon Mine in Price, Utah (the "Crandall Canyon Mine
accident" or "the accident").  Compl. ¶ 2.  Six coal miners were
entombed in the mine and three others were killed during the

rescue efforts.  Compl. ¶ 2.[1]  In September 2007, the MSHA,
pursuant to its statutory authority under the Federal Mine Safety
and Health Act of 1977 (the "Mine Act"), 30 U.S.C. § 801 *et
seq.*,[2] appointed a team of MSHA employees to investigate the
accident.  *See* Compl. ¶ 3.  The principal purpose of the
investigation was to determine the cause or causes of the mine
disasters, "in an effort to prevent similar accidents from
occurring in the future."  Compl. ¶ 13.  The investigation, which
was led by MSHA employee Richard Gates, sought interviews with
mine personnel, including plaintiff, who was General Manager of
UtahAmerican Energy, Inc. and Genwal Resources, Inc., the
companies that ran the Crandall Canyon Mine.  Compl. ¶ 12.

As part of the MSHA's investigation, Gates asked plaintiff
to submit to a sworn interview regarding the accident.  Compl. ¶
13; *see generally* Pl.'s Opp'n Br., Ex. 1, Decl. of Gregory L. Poe
("Poe Decl.") (describing the negotiations between plaintiff's
counsel and the MSHA regarding the terms of plaintiff's
interview).  Gates indicated that the interview would be under
oath and would be transcribed by a court reporter.  Compl. ¶ 13.
He also agreed that plaintiff could request a copy of the
interview transcript, and stated that it would be "provided at a

---

[1]   For additional details regarding the mining accident, *see*
Paul Foy, *Utah Mine Cave-In Traps Six; Miners' Condition Unknown
as Initial Rescue Attempt Fails*, The Wash. Post, Aug. 7, 2007, at
A7.

[2]   The MSHA is authorized to investigate mine accidents and
impose both civil and criminal penalties for violations of health
and safety standards pursuant to the Mine Act.

later time." Compl. ¶ 13. "Induced by MSHA's promise that he would receive a copy of the Transcript," plaintiff was interviewed on December 13, 2007. Compl. ¶ 14.

By letter dated February 4, 2008, plaintiff's counsel requested a copy of the December 13, 2007 interview transcript (the "Transcript"). The MSHA denied this request several days later, stating that "Mr. Adair's statement will be provided at or around the time that the accident investigation report will be issued." Compl. ¶ 16. Plaintiff requested further explanation of the denial, but received no response from the MSHA. Compl. ¶ 16.

On or about May 8, 2008, U.S. Representative George Miller, Chairman of the Committee on Education and Labor in the U.S. House of Representatives, referred plaintiff to the U.S. Department of Justice for a criminal investigation regarding whether plaintiff "willfully made materially false representations on his own accord or as part of a conspiracy to do the same" to the MSHA. Def.'s Statement of Material Facts, Ex. 1, Decl. of Brett L. Tolman ("Tolman Decl.") ¶ 3; *see also* Compl. ¶ 3. Representative Miller's criminal referral was forwarded to the U.S. Attorney's Office for the District of Utah ("Utah USAO") for investigation.

On July 24, 2008, two separate reports were released regarding the Crandall Canyon Mine accident. The first report, a product of the MSHA investigation under Gates (the "Gates Report"), discussed the August 2007 mining accident. Compl. ¶

19.   The Gates Report publicly announced that the MSHA was imposing a penalty of $1.34 million on Genwal Resources for violations that it found directly contributed to the deaths of the six miners entombed in the Crandall Canyon Mine.  Def.'s Mot. Summ. J., Ex. 1, Decl. of Kevin G. Stricklin ("Stricklin Decl.") ¶ 10.

The second report (the "Teaster Report") was released by the Department of Labor ("DOL") and prepared by a team of DOL employees led by Earnest Teaster, Jr. and Joseph Pavlovich ("Teaster and Pavlovich"), two former MSHA managers.  Compl. ¶ 20.  Teaster and Pavlovich were appointed as temporary DOL employees to investigate the MSHA's handling of the Crandall Canyon Mine accident.  *See generally* Def.'s Reply Br., Ex. 1, Decl. of Andrea Burckman ("Burckman Decl.") ¶ 2.  The Teaster Report, which was publicly available on the internet, contained a one-sentence quote from the Transcript.  Compl. ¶ 20.

Following the release of the Gates' Report, on July 25, 2008, plaintiff renewed his request for a copy of the Transcript.  Compl. ¶ 21.  The MSHA responded on August 1, 2008, stating that the July 25 letter was being treated as a FOIA request and had been forwarded to the MSHA's FOIA officer.  Compl. ¶ 22.

On September 8, 2008, the MSHA issued a press release stating that it had made a criminal referral of certain issues relating to the Crandall Canyon Mine accident to the Utah USAO.  Compl. ¶ 21.  Plaintiff's counsel then asked the Utah USAO to produce the Transcript.  Compl. ¶ 25.  The Utah USAO denied the

4

request on the grounds that it needed to "protect the integrity" of its investigation arising from the referrals of Representative Miller and the MSHA.  Compl. ¶ 25.

Plaintiff filed a complaint in this Court on September 12, 2008, seeking (i) a declaratory judgment that the MSHA violated the FOIA and that plaintiff is entitled to receive the Transcript, and (ii) immediate production of the Transcript.  The MSHA filed a motion for summary judgment on November 17, 2008, arguing that FOIA Exemption 7(A) applies and that plaintiff's complaint should be dismissed in its entirety as a matter of law. Defendant's motion is ripe for decision.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  A material fact is one that is capable of affecting the outcome of the litigation.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.* at 252.  A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant.  *Id.* at 255.  To survive a motion for summary judgment, however, the requester "must do more

than simply show that there is some metaphysical doubt as to the material facts"; instead, the nonmoving party must come forward with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e)).

## III. DISCUSSION

### A.   The FOIA and Exemption 7(A)

The FOIA requires that federal agencies release all documents requested by members of the public unless the information contained within such documents falls within one of nine exemptions.  5 U.S.C. § 552(a),(b).  These statutory exemptions must be narrowly construed in favor of disclosure. *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). While an agency may deny a FOIA request when the information sought is exempt from disclosure under the FOIA, 5 U.S.C. § 552(d), the government bears the burden of justifying the withholding.  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 861 (D.C. Cir. 1980).  In carrying its burden, an agency may rely on affidavits or declarations "when the affidavits or declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Kenny v. U.S. Dep't of Justice*,

603 F. Supp. 2d 184, 187 (D.D.C. 2009) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  Summary judgment is therefore appropriate when, viewing the facts in the light most favorable to the requestor, there is no genuine issue of material fact with regard to the agency's compliance with the FOIA.  *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).

The MSHA argues that it properly withheld plaintiff's transcript under Exemption 7(A) of the FOIA and is entitled to judgment as a matter of law.  Under Exemption 7(A), agencies may withhold "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  "In enacting this exemption, 'Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations.'" *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 232 (1978)).  "The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter

evidence." *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762
(D.C. Cir. 2000).

**B.    Public Disclosure of the Transcript**

As a threshold matter, plaintiff argues that summary
judgment is premature, because "discovery is necessary to
determine whether MSHA already has released the transcript, in a
manner that undercuts MSHA's reliance on Exemption 7(A)."  Pl.'s
Opp'n Br. at 2.  As discussed above, Exemption 7(A) applies if
the production of the requested document "could reasonably be
expected to interfere with enforcement proceedings."  5 U.S.C. §
552(b)(7)(A).  Accordingly, plaintiff argues that the risks
associated with the release of the Transcript "may have already
been run" if defendant (i) disclosed the Transcript to the
Teaster Review Team, and (ii) permitted a "crucial portion" of
the Transcript to be quoted in a public report.  *See* Pl.'s Opp'n
Br. at 2, 6-7.  Plaintiff therefore seeks "limited discovery" on
these issues.

Because defendant readily admits that (i) the Transcript was
disclosed to the Teaster Review Team, and (ii) a sentence from
the Transcript was quoted in a publicly available report, *see*
Def.'s Reply Br. at 2 ("MSHA does not dispute that the transcript
was provided to the [Teaster] Review Team or that the review team
quoted in its review of MSHA a single sentence from Mr. Adair's
eight-hour testimony[.]"), the Court concludes that discovery on
these issues is unnecessary.  Having determined that the alleged

disclosures did in fact occur, the Court will now address the substantive issues underlying plaintiff's discovery request: did the MSHA negate the applicability of Exemption 7(A) by disclosing the Transcript to the Teaster Review Team or by permitting a quotation from the Transcript to be included in a publicly available report?

### 1. Disclosure of the Transcript to the Teaster Review Team

Plaintiff first argues that because the MSHA disclosed the Transcript to the Teaster Review Team, "MSHA cannot now take refuge in Exemption 7(A) and deny access to Adair." Pl.'s Opp'n Br. at 10. The crux of plaintiff's argument is that the MSHA waived its right to shield the Transcript from disclosure by sharing the document with an "independent" review team. *See* Pl.'s Opp'n Br. at 11-12 (discussing how the Teaster Review Team was "independent of MSHA"). The Court must therefore determine whether the MSHA's release of the Transcript to the Teaster Review Team was a public disclosure that waived the government's right to withhold the Transcript under Exemption 7(A).

A government agency may not use a FOIA exemption - including Exemption 7(A) - to shield information that has already been publicly disclosed. *See Students Against Genocide*, 257 F.3d 828, 836 (D.C. Cir. 2001) ("This Circuit has held that the government may not rely on an otherwise valid exemption to justify withholding information that is already in the 'public domain.'" (citations omitted)). This public domain doctrine only applies,

however, if the specific information sought was previously
disclosed and "preserved in a permanent public record." *Id*.  In
other words, the requested information must have been made "truly
public." *See Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999)
("[W]e must be confident that the information sought is truly
public and that the requester receive no more than what is
publicly available before we find a waiver.").  As discussed
below, because the Teaster Review Team - although "independent"
from the MSHA - was in the same Department as the MSHA (i.e., the
DOL), *see* Compl. ¶ 8 ("Defendant MSHA is a federal agency within
the United States Department of Labor."), plaintiff's public
disclosure argument must fail.

     The Teaster Review Team was created by former Secretary of
Labor Elaine L. Chao to conduct an internal review of the MSHA's
actions with respect to the Crandall Canyon Mine accident.  *See*
Def.'s Reply Br., Ex. 1, Decl. of Andrea Burckman ("Burckman
Decl.") ¶ 2.  The team was comprised entirely of DOL employees.
Specifically, two former MSHA employees, Teaster and Pavlovich,
were appointed to serve as DOL employees pursuant to 5 U.S.C. §
3109, as implemented in 5 C.F.R. § 304.101 *et seq.*,[3] and were
assisted by five permanent DOL employees.  *See* Burckman Decl. ¶¶
2-3 ("Former Secretary Chao selected [Teaster and Pavlovich] to
serve as experts to lead the [Teaster Review Team], assisted by
DOL employees."); *see generally* Ex. C to Burckman Decl.

---

[3]    5 C.F.R. § 304.101 states that the regulation "appl[ies] to
the appointment of experts and consultants as Federal employees
under 5 U.S.C. 3109."

("Statement of Duties" for Pavlovich and Teaster).  The purpose
of the Teaster Review Team was to develop recommendations "to
improve MSHA's enforcement program and the agency's oversight of
rescue and recovery programs in the aftermath of mine accidents."
Ex. A to Burckman Decl., Press Release, U.S. Dep't of Labor,
*Labor Secretary Elaine L. Chao Announces Independent Review of
MSHA's Actions at Utah's Crandall Canyon Mine* (Aug. 30, 2007).
Day-to-day direction of the Teaster Review Team was provided by
the DOL Office of the Solicitor - Division of Mine Safety and
Health, and the team's findings and conclusions were reported to
the Deputy Secretary of Labor.  *See* Ex. C to Burckman Decl.
Moreover, Teaster and Pavlovich were obligated to maintain the
confidentiality of any information that they received during
their review, and could only disclose information if authorized
by the DOL.  *See* Ex. C to Burckman Decl. ¶¶ 8, 10 (requiring
Teaster and Pavlovich to "[m]aintain the confidentiality of any
information to which they may be given access, and not disclose
any such material or information without the authorization of the
[DOL]" and "[n]ot publish or disclose any report or draft, or
distribute the information related to or developed for this work,
unless authorized by the [DOL]").

Accordingly, the Court concludes that the MSHA's disclosure
of the Transcript to the DOL appointed and controlled Teaster
Review Team was an intra-agency sharing of information - not a
public disclosure.  *See generally Nat'l Inst. of Military Justice
v. United States*, 512 F.3d 677, 679-84 (D.C. Cir. 2008) (broadly

interpreting "intra-agency" to include government employees and contract consultants).  Because the intra-agency sharing of information is not a public disclosure for purposes of the FOIA, *see, e.g., Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 108 (D.C. Cir. 1976) (declining to hold that "mere disclosure of intra-agency memorandum to an advisory committee makes the memorandum public information"); *Kansi v. U.S. Dep't of Justice*, 11 F. Supp. 2d 42, 45 (D.D.C. 1998) (explaining that Exemption 7(A) is not waived by disclosure from a federal law enforcement agency to a state prosecutor); *see also Students Against Genocide*, 257 F.3d at 836-37 (holding that photographs released to Security Council Delegates, but not to the general public, "plainly do not fall within [the] doctrine [of public disclosure]"), the Court finds that the MSHA's disclosure of the Transcript to the Teaster Review Team does not negate defendant's reliance on Exemption 7(A).

### 2. Disclosure of One Sentence of Plaintiff's Transcript in a Public Report

Next, Plaintiff argues that the MSHA's reliance on Exemption 7(A) is undermined because the Teaster Review Team "quoted a crucial portion of the transcript in its report."  Pl.'s Opp'n Br. at 2.  Specifically, the Teaster Report - which was available online - included a one sentence quotation that was "taken directly from the transcript of Adair's December 13, 2007 MSHA interview."  Pl.'s Opp'n Br. at 9.  Defendant responds that the public release of one sentence of the Transcript does not defeat

the application of Exemption 7(A) to withhold disclosure of plaintiff's entire Transcript.  Def.'s Reply Br. at 6.  This Court agrees.

Courts have routinely recognized that "[t]he disclosure of a few pieces of information in no way lessens the government's argument that complete disclosure would provide a composite picture of its investigation and have negative effects on the investigation."  *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 930-31; *see also Students Against Genocide*, 257 F.3d at 835 ("The fact that some 'information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations.'" (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990))); *Military Audit Project v. Casey*, 656 F.2d 724, 752 (D.C. Cir. 1981) (holding that partial disclosure of sensitive information does not render implausible the government's claim that full disclosure would harm national security).  Accordingly, the Court concludes that the public disclosure of one sentence from an eight-hour interview does not undermine the MSHA's broader concern that disclosure of the entire Transcript would damage the ongoing criminal investigation of the Utah USAO.  *See infra* Section III.B.  The application of Exemption 7(A) is therefore not negated by this partial disclosure.

C.   **Exemption 7(A): Interference with Enforcement Proceedings**

Having determined that the entire Transcript was not publicly disclosed, the Court must now determine whether the government has proven that the requested information falls within Exemption 7(A).  In order to withhold agency documents under Exemption 7(A), an agency must first establish, as a threshold test, that the documents requested were "'compiled for law enforcement purposes.'"  *See Ctr. for Nat'l Sec. Studies*, 331 F.3d at 925-26 (quoting 5 U.S.C. § 552(b)(7)).  "To establish a law enforcement purpose, [the defendant's] declarations must establish (1) a rational nexus between the investigation and one of the agency's law enforcement duties; and a (2) connection between an individual or incident and a possible security risk or violation of law."  *Id.* (internal quotation marks omitted).

Defendant has easily satisfied this requirement.  The MSHA's investigation of the Crandall Canyon Mine accident relates to the MSHA's enforcement duties under the Mine Act, *see* Stricklin Decl. ¶ 2 (explaining that the Mine Act authorizes the Secretary of Labor, through the MSHA, to investigate mine accidents and to assess and collect civil and criminal penalties for health and safety violations), and the purpose of the MSHA's investigation was to determine "'the cause of the ground failure at Crandall Canyon mine and any violations of safety and health standards.'" Stricklin Decl. ¶ 4 (quoting the MSHA's Press Release dated Aug. 30, 2007).  As a result of its investigation, the MSHA imposed a

$1.34 million penalty on the mine's operator and made a formal referral for a criminal investigation to the Utah USAO. Stricklin Decl. ¶ 10.  Consequently, the Court finds that the transcript of plaintiff's interview - which was taken under oath by the MSHA as part of its investigation of the Crandall Canyon Mine accident - was compiled for law enforcement purposes.  *See generally* Stricklin Decl. ¶ 5 ("During the course of its investigation into the Crandall Canyon accidents, MSHA solicited voluntary sworn statements of people who had knowledge of the events and circumstances relating to these accidents, including Laine Adair . . . .").

Having satisfied this threshold requirement, defendant must next establish (1) that a law enforcement proceeding "is pending or prospective," and (2) that the release of the requested information "could reasonably be expected to cause some articulable harm."  *See Kay v. FCC*, 976 F. Supp. 23, 37 (D.D.C. 1997) (discussing the "two-step analysis" of Exemption 7(A)). The Court finds that defendant has satisfied both requirements.

First, with regard to a pending or prospective law enforcement proceeding, the ongoing criminal investigation by the Utah USAO satisfies this requirement.  *See* Tolman Decl. ¶ 9 (discussing the Utah USAO's investigation and explaining that the office "is currently acting on both criminal referrals from Chairman Miller and the Department of Labor").  The fact that the Transcript was compiled during the MSHA's investigation of the Crandall Canyon Mine accidents - prior to the Utah USAO's

investigation - does not change the fact that there is an ongoing investigation that could result in an "enforcement proceeding." 5 U.S.C. § 552(b)(7)(A); *see, e.g.*, *Cudzich v. U.S. Immigration & Naturalization Serv.*, 886 F. Supp. 101, 106-07 (D.D.C. 1995) (concluding that even though the INS had completed its investigation of the plaintiff, the ongoing investigations of the plaintiff by other law enforcement agencies satisfied Exemption 7(A)).

Second, the Tolman declaration establishes that the "[d]isclosure of Mr. Adair's statement at this time could reasonably be expected to harm the ongoing criminal investigation." Tolman Decl. ¶ 10. As Tolman explains:

> One of the central issues in our investigation is what Mr. Adair and others told MSHA. If the statement is released, either in whole or in part, Mr. Adair and others will know exactly what Mr. Adair said under oath when interviewed by MSHA in December 2007. This creates the possibility for others to compare their potential testimony with Mr. Adair's and would allow them to collaborate to obtain a consistency of detail and memory that will not be available if Mr. Adair's statement is not released. In the same vein, disclosure of the statement also would enable a witness to adopt Mr. Adair's version of the facts and preclude a more thorough investigation of the witness's recollection. . . . To protect the integrity of this office's ongoing criminal investigation, it is important to ensure that this office remains able to obtain independent recollections of witnesses regarding the events surrounding the accident.

Tolman Decl. ¶ 10. These concerns satisfy the "interference" requirement of Exemption 7(A). *See, e.g.*, *Boyd v. Crim. Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 386 (D.C. Cir. 2007)

("The government meets its burden by demonstrating that release of the requested information would reveal 'the size, scope and direction of [the] investigation' and thereby 'allow for the destruction or alteration of relevant evidence, and the fabrication of fraudulent alibis.'" (quoting *Alyeska Pipeline Serv. Co. V. U.S. Envtl. Prot. Agency*, 856 F.2d 309, 312 (D.C. Cir. 1988)); *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996) (recognizing the applicability of Exemption 7(A) because disclosure would make documents relevant to the investigation "public and available to everyone, including others under Commission scrutiny"); *see generally Cudzich*, 886 F. Supp. at 106 n.1 ("Interference under the terms of the statute encompasses a wide range of concerns.  Grounds which have been repeatedly acknowledged by the courts include fears of disclosure of: (1) evidence, (2) witnesses, (3) prospective testimony, (4) the reliance placed by the government upon the evidence, (5) the transactions being investigated, (6) the direction of the investigation, (7) government strategy, (8) confidential informants, (9) the scope and limits of the government's investigation, (10) prospective new defendants, (11) materials protected by the Jencks Act, (12) attorney work product, (13) the methods of surveillance, [and] (14) subjects of surveillance." (internal quotation marks omitted)).  Because defendant has articulated a harm that can reasonably be expected to interfere with an ongoing law enforcement investigation, Exemption 7(A) has properly been invoked to withhold plaintiff's Transcript from

17

disclosure.  The Court concludes that the government has proven
that the requested information falls within Exemption 7(A).

### D. Equitable Estoppel

Finally, plaintiff argues that "[e]ven if the Court
determines . . . that Exemption 7(A) permits MSHA to withhold the
transcript, MSHA should be required to produce the transcript
under the doctrine of equitable estoppel."  Pl.'s Opp'n at 13.
It is plaintiff's position that the MSHA should be prevented from
withholding the Transcript because "MSHA representatives made
definite representations to Adair before he agreed to be
interviewed that the agency would provide him with a copy of the
transcript."  Pl.'s Opp'n at 13-14.  Plaintiff further asserts
that after the MSHA secured Adair's testimony, the agency refused
to permit Adair to review the requested transcript and did not
provide an explanation for its denial.  Pl.'s Opp'n at 15.
Defendant argues that plaintiff's claim for equitable estoppel
should fail because the doctrine is not applicable to the facts
of this case, and that even if it is, plaintiff has failed to
establish the necessity of the requested relief.  Def.'s Reply
Br. at 7-10.  This Court assumes without deciding that a claim
for equitable estoppel is cognizable in this context, and agrees
with defendant that plaintiff has failed to establish the
essential elements of an equitable estoppel claim.  *See Keating
v. FERC*, 569 F.3d 427 (D.C. Cir. 2009) (assuming without deciding
that equitable estoppel may be applied against the federal

government (citing *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 423 (1990))).

Traditionally, "[t]he doctrine of equitable estoppel requires a showing that: (1) there was a 'definite' representation to the party claiming estoppel; (2) the party relied on its adversary's conduct to his detriment; and (3) the reliance on the representation was 'reasonable.'" *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 83 (D.D.C. 2003) (quoting *Graham v. SEC*, 222 F.3d 994, 1007 (D.C. Cir. 2000)).  Application of this doctrine to the government, assuming it is permissible, must be "rigid and sparing" and may only be used in "compelling" circumstances.  *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988); *see also Waukesha State Bank v. Nat'l Credit Union Admin. Bd.*, 968 F.2d 71, 74 (D.C. Cir. 1992) (noting "the rather questionable bounds of the applicability of the equitable estoppel doctrine to the government").  Litigants in this Circuit who seek to assert equitable estoppel claims against the government must therefore also establish "a showing of injustice" and "lack of undue damage to the public interest." *ATC Petroleum*, 860 F.2d at 1111.

The Court need not analyze each prong of this test because the Court concludes that plaintiff has failed to demonstrate that "enforcement of the promise would be in the public interest and would prevent injustice."  *Nat'l Juvenile Law Center, Inc. v. Regnery*, 738 F.2d 455, 459 (D.C. Cir. 1984).  The public has a

strong interest in preserving the integrity of a pending criminal investigation involving an accident that resulted in nine fatalities.  Defendant has submitted sworn testimony that "releasing Mr. Adair's statement, or any portion of that statement, could reasonably be expected to harm the investigation of his and others' activities related to the August 6 Collapse." Tolman Decl. ¶ 11; *see also* Tolman Decl. ¶ 10.  In view of the potential harm to the executive branch's ongoing criminal investigation if the Transcript was disclosed, the public interest favors the continued withholding of the Transcript at this time.

While the Court is sympathetic to plaintiff's request to review his sworn testimony, *see* Pl.'s Opp'n Br. at 15 ("[D]espite Adair's efforts, he was never provided an opportunity, afforded to witnesses in civil litigation and even grand jury witnesses, to make sure that the transcript accurately reflected what he actually said."), no "egregious injustice" will result if this review is delayed.  *Int'l Org. of Masters, Mates & Pilots v. Brown*, 698 F.2d 536, 552 (D.C. Cir. 1983); *see also* GAO v. GAO Pers. Appeals Bd., 698 F.2d 516, 526 (D.C. Cir. 1983) (estoppel requires a government agent to "behave in ways that have or will cause an egregiously unfair result").  This is particularly true given that the "MSHA anticipates that a copy of Mr. Adair's statement will be made available to him at the conclusion of the government's ongoing criminal investigation and at a time when, in the judgement of the U.S. Attorney's Office for the District

of Utah, doing so would no longer be expected to compromise that investigation." Stricklin Decl. ¶ 13.  For these reasons, the Court concludes that plaintiff's case for equitable estoppel does not meet the "compelling" standard required by the case law and must therefore be rejected.  *ATC Petroleum*, 860 F.2d at 1111.

### V.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** defendant's motion for summary judgment.  An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            September 23, 2009**